IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SONYA HOFFMAN, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | No. 13-cv-5700 |
| v. | : | |
| | : | |
| WELLS FARGO BANK, N.A., | : | |
| PHELAN HALLINAN & SCHMIEG, LLP, | : | |
| and COURTENAY R. DUNN, ESQ., | : | |
| Defendants. | : | |

MCHUGH, J.                                                                                          DECEMBER 4, 2014

## MEMORANDUM

The case before the Court involves a homeowner against whom the Defendants here brought a foreclosure action in state court. The foreclosure action ultimately proved unsuccessful, but during that litigation unrecorded mortgage assignments were discovered. Plaintiff Sonya Hoffman alleges that these unrecorded assignments invalidated the recorded assignments upon which the Defendants were relying in asserting their right to foreclose. Plaintiff contends that the foreclosure action was unlawful and has now filed suit in this Court alleging a violation of several consumer protection statutes.

**I.      Factual Background**

Wells Fargo, represented by Phelan Hallinan, LLP ("PH"), commenced a mortgage foreclosure action against Plaintiff in the Court of Common Pleas of Delaware County, Pennsylvania. Compl. ¶ 13. Plaintiff raised preliminary objections, and in response, PH filed an amended civil complaint. Id. at ¶ 15. Wells Fargo and PH alleged that the subject mortgage was assigned to Wells Fargo through an assignment recorded May 16, 2011. Id. at ¶ 14; Exhibit B.

1

The amended complaint further alleged that the subject mortgage had been assigned to Wells Fargo's predecessor by an assignment recorded on November 15, 1999.  Compl. ¶ 16; Exhibit A.

Wells Fargo then sought summary judgment based on the assignments identified.  Compl. ¶ 17.  While the motion was pending, PH responded to Plaintiff's discovery requests, specifically asserting that the assignments identified supported Wells Fargo's right to foreclose.  Id. at ¶ 18.  Supplemental responses filed two months later repeated that assertion.  Id. at ¶ 19.  However, at trial in the foreclosure action, PH provided for the first time a collection of documents that it represented to have been provided to it by Wells Fargo.  Id. at ¶ 20.  Upon inspection, this collection of documents contained two unrecorded assignments, the existence of which had not been previously made known to Plaintiff.  Id. at ¶ 20; Exhibits C, D.

Plaintiff claims that the two recorded assignments were offered as evidence in support of Wells Fargo's claim that it was entitled to foreclose.  Compl. ¶ 23.  Plaintiff also claims that the two unrecorded assignments contradicted the recorded assignments and precluded their validity. Id. at ¶ 24.  Plaintiff ultimately defeated the Wells Fargo foreclosure action, and subsequently filed this suit.  She now claims injuries including, but not limited to, mental anguish, emotional distress, damage to credit and reputation, and costs plus attorney's fees accrued in defense of the foreclosure action.  Id. at ¶ 25.

Plaintiff has filed suit against Wells Fargo, PH, and Courtenay R. Dunn (a PH attorney). Plaintiff brought her claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692a(5), the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA"), 73 P.S. § 2270.3, and the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-2(3).  Count II pertaining to the FCEUA was dismissed with

2

prejudice against all defendants by Judge Dalzell on March 5, 2014. Count I was also dismissed with regard to Wells Fargo, but not the other two defendants.

## II. Motion for Judgment on the Pleadings under Rule 12(c)

Defendants have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Plaintiff initially contests this motion on the grounds that it is procedurally improper. Plaintiff cites Rule 12(g) as a bar that prohibits a party from raising a defense or objection in the form of a Rule 12 motion where the defense or objection was previously available but ultimately omitted. However, Rule 12(g)(2) makes an exception for motions falling within Rule 12(h)(2). Rule 12(h)(2) provides that parties may assert the failure to state a claim upon which relief can be granted via a motion brought under Rule 12(c). The fact that the Defendants have formerly brought a motion under Rule 12(b)(1) without also moving under Rule 12(b)(6) will not prevent them from bringing their Rule 12(c) motion.

Furthermore, this Court evaluates a Rule 12(c) motion in the same manner as one brought under Rule 12(b)(6). See D.E. v. Central Dauphin School Dist., 765 F.3d 260, 271 (3d Cir. 2014). The facts alleged in the pleadings and the inferences to be drawn from those facts will be viewed in the light most favorable to the plaintiff. Id. Additionally, in a motion under Rule 12(c), the moving party has the burden of showing "that there is no material issue of fact to resolve, and that it is entitled to judgment in its favor as a matter of law." Id.

## III. FDCPA Claim

Under 15 U.S.C. § 1692e, "a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." Id. Plaintiff claims that the Defendants, by proffering the invalid assignments in support of their foreclosure action, "falsely represented the character and/or legal status of a debt in violation of

3

[§ 1692e(2)(A)], threatened to take an action that could not legally be taken, in violation of [§ 1692e(5)], and used a false representation or deceptive means to attempt to collect a debt, in violation of [§ 1692e(10)]." Compl. ¶ 30.

The initial inquiry involves whether or not the two recorded assignments upon which Defendants relied in launching their foreclosure action were, in fact, invalidated by the undisclosed, unrecorded assignments that they had in their possession. For the purposes of this motion, the fact that Plaintiff pleaded that they had been invalidated is enough, though evidence will need to be provided later. If, however, the recorded assignments remained valid, then clearly no FDCPA claim may lie.

The next threshold question is whether Defendants' use of the recorded assignments as the basis of their right to foreclose upon Plaintiff's mortgage, and endorsement of their validity contained within court submissions, may be properly considered for the purposes of FDCPA claims. I agree with the reasoning set forth by Judge Dalzell in <u>Yentin v. Michaels, Louis & Assocs., Inc.</u>, No. 11-0088, 2011 WL 4104675, at *12 (E.D. Pa. Sept. 15, 2011), holding that the requirements of the FDCPA apply to legal pleadings, except where they are explicitly exempted. <u>Id.</u>; <u>see also</u> <u>Henry v. Shapiro</u>, No. 09-3100, 2010 WL 996459, at *2 (E.D. Pa. Mar. 15, 2010). By the same logic, representations made within legal documents such as a motion for summary judgment, and other representations made in the course of litigation, may violate the statute.

Plaintiff claims that Defendants had both knowledge and possession of the unrecorded assignments, were aware that they invalidated the recorded assignments, and yet still misrepresented the recorded assignments as creating their right to bring the foreclosure action against Plaintiff. Again, I agree with Judge Dalzell in <u>Yentin</u> that false representations prohibited by § 1692e need not be intentional. 2011 WL 4104675, at *16. This conclusion is

4

further bolstered by the inclusion of §1692k(c), which creates an affirmative defense whereby a debt collector "may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." Id.  The elements of this defense make it clear that unintentional misrepresentations create liability where a debt collector has not exercised due care to avoid them.

To this point in the analysis, Plaintiff has adequately pleaded a claim under § 1692e. However, Defendants further urge the Court to dismiss on the theory that any false representation had no material effect on the outcome of the foreclosure action.  The Third Circuit has not yet taken a position on whether a materiality component should be included in FDCPA claims that arise from communications made in the course of a debt collector's litigation. Kaymark v. Bank of America, N.A., No. 13-0419, 2014 WL 1316120, at *17 (W.D. Pa. Mar. 31, 2014); Good v. Nationwide Credit, Inc., No. 14-4295, 2014 WL 5422103, at *5 (E.D. Pa. Oct. 27, 2014).  Several other circuits have, however, read a materiality requirement into the FDCPA. See, e.g., Warren v. Sessoms & Rogers, P.A., 676 F.3d 365, 374 (4th Cir. 2012); Miller v. Javitch, Block & Rathbone, 561 F.3d 588, 596 (6th Cir. 2009); Hahn v. Triumph P'ships LLC, 557 F.3d 755, 758 (7th Cir. 2009); Donohue v. Quick Collect, Inc., 592 F.3d 1027, 1034 (9th Cir. 2010).

Defendants fundamentally misunderstand the materiality inquiry.  Their premise is that because neither the recorded nor the unrecorded assignments were entered into evidence in the foreclosure action, any misrepresentation was immaterial to the decision of that court.  This

5

misses the point of plaintiff's case, which is that the undisclosed, unrecorded assignments undermined Defendants' right even to commence the foreclosure action.

Even if this Circuit followed the other circuits that have imputed a materiality factor, Defendants would not succeed on this point. Materiality is a "corollary to the well-established proposition that '[i]f a statement would not mislead the unsophisticated consumer, it does not violate the [FDCPA]—even if it is false in some technical sense.'" Donohue, 592 F.3d at 1033 (quoting Hahn, 557 F.3d at 758). In this case, commencement of the foreclosure action, citing specific assignments as creating the right—all the while knowing of or having possession of other assignments invalidating the right—would mislead any consumer, sophisticated or otherwise. "[I]n assessing FDCPA liability, we are not concerned with mere technical falsehoods that mislead no one, but instead with genuinely misleading statements that may frustrate a consumer's ability to intelligently choose his or her response." Id. Defendants' conduct here would certainly affect a borrower's ability to respond.

This conclusion is bolstered by the types of misrepresentations deemed immaterial in the case law. Hahn involved a demand letter that contained an accurate account of a sum of money owed, but had mislabeled some of the component amounts. 557 F.3d at 756. The court found that "reporting interest in one line item rather than another (or in two line items) harms no one." Id. at 757. Similarly, Donohue dealt with a situation where the defendants' state court complaint correctly calculated the total debt owed, but again mislabeled the component amounts. 592 F.3d at 1033. Whereas the misrepresentations made in these cases did not actually affect the size of the debt or to whom the debt was owed, the misrepresentation made by Defendants in the case before this Court affected whether a large sum of money in the form of a mortgage was in fact

owed to the party bringing the foreclosure action.  Whatever the legal test, Plaintiff has alleged a material misrepresentation.

Given my understanding of Plaintiff's claim, despite the conclusory nature of Plaintiff's response, there is no reason to dismiss Plaintiff's FDCPA claim at this point

### IV.    UTPCPL Claim

Plaintiff also proceeds under the Pennsylvania Unfair Trade Practices Act and Consumer Protection Law.  As described by the Superior Court:

> The UTPCPL is Pennsylvania's consumer protection law and seeks to prevent unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. The purpose of the UTPCPL is to protect the public from unfair or deceptive business practices. Our Supreme Court has stated courts should liberally construe the UTPCPL in order to effect the legislative goal of consumer protection. The UTPCPL provides a private right of action for anyone who suffers any ascertainable loss of money or property as a result of an unlawful method, act or practice.

Fazio v. Guardian Life Ins. Co. of Am., 62 A.3d 396, 405 (Pa. Super. Ct. 2012).

"To bring a private cause of action under the UTPCPL, a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance."  Yocca v. Pittsburgh Steelers Sports, Inc., 578 Pa. 479, 501, 854 A.2d 425, 438 (2004).  Defendants claim that Plaintiff did not actually rely on the misrepresentation of the assignments because she contested the foreclosure in court.

Simply because Plaintiff raised a defense does not mean she knew that the proffered assignments may have been invalidated.  In fact, Plaintiff pleads no previous knowledge of the existing unrecorded assignments.  The hiring of an attorney to contest the issue is a sensible reaction to the filing of an adverse foreclosure complaint, and Plaintiff's need for an attorney actually becomes greater when presented with seemingly valid assignments to back up that foreclosure claim.  Defendants cite Kimmel v. Phelan Hallinan & Schmieg, PC, 847 F. Supp. 2d

7

753, 771 (E.D. Pa. 2012), but in that case, the plaintiffs' complaint made clear that they knew the misrepresentations were false.  There is nothing in the instant complaint that leads to the conclusion that Plaintiff believed anything other than that the proffered assignments were valid.  This reliance shaped Plaintiff's litigation strategy, and the costs associated with that assumption are sufficient to defeat this motion.  Certainly, if the unrecorded assignments were as damning as Plaintiff alleges, much of this litigation may have been cut short.  Additionally, these representations are alleged to have created the likelihood of confusion and misunderstanding encompassed by the UTPCPL.

Defendants also raise the economic loss doctrine as a defense to the UTPCPL claim.  In Knight v. Springfield Hyundai, 81 A.3d 940 (Pa. Super. Ct. 2013), a Pennsylvania Superior Court explained that the Pennsylvania "Supreme Court has defined the economic loss doctrine as providing 'no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage.'"  Id. at 951-52 (citing Excavation Tech., Inc. v. Columbia Gas Co. of Pa., 604 Pa. 50, 53, 985 A.2d 840, 841 (2009)).  Using that logic, Knight determined that the economic loss doctrine did not bar the UTPCPL claims at issue because statutory claims brought pursuant to the UTPCPL do not have their roots in the law of negligence.  Id. at 952.

In an earlier decision, Werwinski v. Ford Motor Co., 286 F.3d 661 (3d Cir. 2002), the Third Circuit held to the contrary, concluding that the economic loss doctrine did in fact apply to bar the UTPCPL claims in that case.

The scope of Werwinski has been aptly summarized by my colleague Judge Padova:

> In Werwinski, . . . the United States Court of Appeals for the Third Circuit held that where a defendant's allegedly fraudulent misrepresentations concerned the subject of a contract between the plaintiff and the defendant, the tort claims were clearly intertwined with, rather than extraneous to, the contract claims and are

8

> barred by the economic loss doctrine. 286 F.3d at 678. Courts have applied
> <u>Werwinski</u>, *inter alia*, to bar UTPCPL claims where allegedly deceptive conduct
> "is clearly interwoven with": (1) an insurance contract, see, e.g., <u>Sicherman v.
> Nationwide Life Ins. Co.</u>, No. 11–7227, 2012 WL 1122737, at *4 (E.D. Pa. Apr.
> 4, 2012) (dismissing UTPCPL claim where wife's claim that defendant deceived
> her late husband into letting his life insurance policy lapse was critically related to
> the alleged breach); (2) a construction contract, see, e.g., Gadley v. Ellis, No. 13–
> 17, 2014 WL 3696209, at *6 (W.D. Pa. July 23, 2014) (granting summary
> judgment on UTPCPL claim where only claim of property damage was to
> property that was subject of the construction contract); and (3) a mortgage loan
> agreement, see, e.g., <u>Schwartz v. OneWest Bank</u>, FSB, No. 13–113, 2013 WL
> 6037078, at *6 (E.D. Pa. Nov. 13, 2013) (dismissing UTPCPL claim where
> claims "turns on the construction of the language of the mortgage" and were
> "necessarily interwoven with the mortgage itself").

<u>Abraham v. Ocwen Loan Servicing, LLC</u>, No. 14-4977, 2014 WL 5795600, at *7 (E.D. Pa. Nov. 7, 2014).

I conclude that <u>Werwinski</u> does not apply to the claims brought in this case. As the Third Circuit stated, "[t]he economic loss doctrine 'prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract.'" 286 F.3d at 671 (quoting <u>Duquesne Light Co. v. Westinghouse Elec. Corp.</u>, 66 F.3d 604, 618 (3d Cir. 1995)). <u>Werwinksi</u> certainly bars some UTPCPL claims, but I read it as requiring an analysis of the facts and the nature of the claim. Here, no claim exists that could sound in contract rather than under the UTPCPL. In fact, the whole basis of this case is the allegation that a fraudulent representation was made by Defendants that a legally enforceable contract existed between Wells Fargo and Plaintiff, when, in fact, it did not. Given that there is no recourse under contract law for Plaintiff's claims, her UTPCPL claim may proceed at this stage of the litigation.

**V.      Conclusion**

In light of all of the above, Plaintiff may proceed on both her FDCPA claim and her UTPCPL claim.  Defendants' Motion for Judgment on the Pleadings will be denied.  An appropriate order follows.


                   /s/ Gerald Austin McHugh
                United States District Court Judge