**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SONYA HOFFMAN,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | **No. 13-cv-5700** |
| **v.** | : | |
| | : | |
| **WELLS FARGO BANK, N.A.,** | : | |
| **PHELAN HALLINAN & SCHMIEG, LLP,** | : | |
| **and COURTENAY R. DUNN, ESQ.,** | : | |
| **Defendants.** | : | |

**MCHUGH, J.**                                                    **JUNE 16, 2015**

<u>**MEMORANDUM**</u>

Defendant Wells Fargo has renewed a prior Motion to Dismiss Plaintiff's remaining

Unfair Trade Practices and Consumer Protection Law (UTPCPL) claim. Additionally,

Defendants Phelan Hallinan, LLP and Courtenay R. Dunn have filed a Motion for

Reconsideration pertaining to this Court's previous denial of their Motion for Judgment on the

Pleadings. I address both pending Motions in this Memorandum.

**I.**        **Facts**

*A. Initial Mortgage Transaction*

Sonya Hoffman purchased real property in Darby, PA, on August 14, 1998. On the same

date, Hoffman obtained a loan from Avstar Mortgage Corporation for $39,784. Accordingly,

Hoffman executed a promissory note to Avstar, its successors and assigns, to evidence her

obligation to repay the loan. Hoffman also executed a purchase money mortgage to Avstar, its

successors and assigns to secure her obligations under the note, granting Avstar a lien and

security interest in the property. The deed and mortgage were recorded in Delaware County on

August 17, 2008.

1

*B.  The Assignments*

Wells Fargo would eventually bring a foreclosure action during which it produced three recorded assignments.  The first recorded assignment, dated August 14, 1998, shows Avstar assigning the mortgage to Principal Residential Mortgage, Inc.  That assignment was recorded August 17, 1998.  The second recorded assignment, dated November 2, 1999, shows Principal Residential Mortgage assigning the mortgage to Fleet Mortgage Corp.  That assignment was recorded November 15, 1999.  Finally, the mortgage was assigned to Wells Fargo on April 6, 2011, from "the Federal Deposit Insurance Corporation as receiver of Washington Mutual Bank F/K/A Washington Mutual Bank, FA successor in interest to Washington Mutual Home Loans, Inc. successor by merger to Fleet Mortgage Corp."  Fleet had merged with Washington Mutual at some point in the past.  Thus the recorded assignments evidence a complete and unbroken chain leading to Wells Fargo.

Hoffman has produced the two unrecorded assignments that were present in the file that Wells Fargo brought to the foreclosure proceeding.  The first unrecorded assignment was executed September 1, 1998, and shows Principal Residential Mortgage assigning the mortgage to Government National Mortgage Association (Ginnie Mae).  The assignment is signed and notarized.  September 1, 1998 is after the date in which Principal Residential Mortage was assigned the mortgage by recorded assignment and before the date in which it assigned away the mortgage via recorded assignment.  The second unrecorded assignment was executed on November 2, 1999 and shows Fleet Mortgage Corp. assigning the mortgage again to Ginnie Mae.  The assignment is signed and notarized.  This assignment took place on the same date that Fleet is shown to have received assignment of the mortgage from Principal Residential Mortgage.  While the two unrecorded assignments are feasible in that the entity purported to

have assigned the mortgage did indeed have possession of the mortgage at the time, the unrecorded assignments also conflict with each other.  Fleet could not have assigned the mortgage in the second unrecorded assignment if Principal had assigned the mortgage in the first unrecorded assignment.

   *C.  Foreclosure Trial and Decision*

   In February of 2012, Wells Fargo commenced a foreclosure action against Hoffman in the Delaware County Court of Common Pleas, alleging that Hoffman was in default under the Note and the Mortgage.  After preliminary objections by Hoffman challenging Wells Fargo's standing, Wells Fargo filed an amended complaint on May 10, 2012.  Wells Fargo alleged that it was the holder of the Mortgage entitled to enforce it, and in support thereof attached copies of the Note, the Mortgage, and the recorded assignments of the Mortgage.  Additionally, Wells Fargo alleged that the endorsements to the Note reflect the transfer of ownership of the Note and Mortgage from Avstar to Principal, and then from Principal to Fleet.  At that point, Wells Fargo alleged that Fleet endorsed the note "in blank," thereby converting the Note to a "bearer instrument" enforceable by the holder.  Wells Fargo filed a motion for summary judgment relying on both the recorded assignments and its status as holder in possession of the blank endorsed Note.  The Court of Common Pleas denied that motion for summary judgment without issuing an opinion.

   A bench trial was held on September 18, 2013 before Judge G. Michael Green of the Delaware County Court of Common Pleas.  Wells Fargo had been represented by Courtenay Dunn of Phelan Hallinan at all times, and Hoffman had been represented by David E. Pearson.  Pearson continues to be Hoffman's attorney in this present action based on the foreclosure action.  At trial, Dunn had the original Note and Mortgage present.  At the outset of the trial,

Dunn handed the origination file to Pearson for inspection. Pearson noted that there were documents in the file that were not produced in discovery. Those documents were the two unrecorded assignments at issue in this case.

After Dunn and Wells Fargo had rested their case, Pearson objected to the admission of a copy of the Note. The Judge ruled that Hoffman's answers to the complaint admitted that Hoffman had executed the note on the date indicated, but also found that Hoffman's answers explicitly denied that the Note was endorsed in blank. The Judge found that no evidence had been offered as to whether the Note was endorsed in blank, and as such, he would not treat it as having been so endorsed. Transcript at 37-38. Similarly, Pearson objected to the admission of the three recorded assignments on the basis of hearsay. Transcript at 39-44. The Judge determined that there was no hearsay exception that would permit the assignments into evidence, and they were excluded.

Pearson, in making his case, pointed out that the Note was "not endorsed to [Wells Fargo] and it's not endorsed in blank. They have no basis to enforce the Note." Transcript at 50. Furthermore, Pearson argued that there was no chain of assignment because the recorded assignments were not admitted. Id. An exchange took place over the unrecorded assignments that were not produced, with Pearson insinuating that they may have been concealed and suggesting sanctions. Transcript at 51. However, in trying to admit the unrecorded assignments, the Judge determined that they could not be admitted for the same reason the three recorded assignments could not be admitted. Transcript at 64-70.

In closing, Dunn argued that, whether the endorsements were admitted or not, possession of the Note entitled Wells Fargo to proceed in the action. Transcript at 75. Pearson disputed this assertion, saying possession in the UCC does not mean merely physical possession. Transcript at

97-98, 101-102.  The Judge concluded by requesting briefing from the parties on two topics: (1)

standing and (2) the court's authority in granting an *in rem* judgment on the facts as proven.

Transcript at 103.

The Court of Common Pleas issued its decision on December 18, 2013.  Under findings

of fact, the Court noted that: (1) none of the assignments were admitted into evidence; (2) the

Amended Complaint, Note, and Mortgage were admitted into evidence; (3) the Note was

admitted into evidence but not accepted as a document endorsed in blank.  The Court also

concluded that 13 Pa. C.S.A. § 3301 provides that "person entitled to enforce" an instrument is

"the holder of the instrument."  A "holder" is defined as the person in possession of a negotiable

instrument that is payable either to the bearer or to an identified person that is the person in

possession.  This appears to have been the Court's rejection of Dunn's argument that physical

possession of the note is enough to support standing to foreclose, though Wells Fargo claims in

its motion to dismiss that the state court failed to consider whether Wells Fargo's possession of

the original note at the time of trial conferred standing to enforce the note and mortgage as a

"nonholder in possession of the instrument with the rights of a holder."  Motion to Dismiss at 9

(citing 13 Pa. C.S.A. § 3301(2)).  The Court held that Wells Fargo failed to establish by credible

evidence that it was the holder of the note at issue, and thus the Court found in favor of Hoffman.

D.  *Current Posture of the Suit*

Hoffman commenced this action against Wells Fargo, Phelan Hallinan, and Courtenay

Dunn on October 2, 2013.  This date was after the bench trial, but before the decision in the

foreclosure action was rendered.  The complaint asserted claims under the Fair Debt Collections

Practices Act, 15 U.S.C. §§ 1692-1692p (FDCPA), Pennsylvania's Fair Credit Extension

Uniformity Act, 73 P.S. §§ 2270.1-2270.6 (FCEUA), and the Unfair Trade Practices and

Consumer Protection Law, 73 P.S. §§ 201-1 to 201-9.3 (UTPCPL). The present complaint alleges that the foreclosure complaint claimed the right to foreclose based on the chain of recorded assignments. Additionally, the complaint claims that the Defendants relied on the recorded assignments in moving for summary judgment and in its supplemental responses provided to Hoffman in that action. However, Defendants did not disclose or produce the unrecorded assignments until the bench trial in the foreclosure action was already underway. The present complaint further alleges that the unrecorded assignments precluded the validity of the recorded assignments. As a result, Hoffman claims to have sustained injuries including mental anguish, emotional distress, damage to credit and reputation, and costs and attorney's fees to defend against the foreclosure action.

PH filed a motion to dismiss under <u>Younger</u> abstention due to the pending foreclosure action that was still ongoing. Additionally, Wells Fargo filed a motion to dismiss on January 6, 2014. On February 21, 2014, Judge Dalzell, who was previously assigned to this case, granted Wells Fargo's motion with regard to the FDCPA claim and dismissed Count I of the complaint as to Wells Fargo. However, since Hoffman's FDCPA claim remained against PH, Judge Dalzell denied Wells Fargo's motion with respect to the FCEUA and UTPCPL claims with permission to reassert after the court had determined whether the FDCPA claim would remain against PH, since Wells Fargo had urged that the Court should decline to exercise supplemental jurisdiction over the state law claims if the FDCPA claim was dismissed.

On March 5, 2014, Plaintiff advised the Court that she would no longer be pursuing the FCEUA claims against any of the Defendants, and Judge Dalzell issued an order dismissing Count II of the complaint in its entirety, but also instructing PH to respond to the complaint. At

this point, the claim remaining against Wells Fargo was the UTPCPL claim, and the claims remaining against PH were the FDCPA and UTPCPL claims.

PH filed its answer on March 17, 2014, and a pre-trial conference was held before Judge Dalzell on March 25, 2014. After PH informed Judge Dalzell that it would be filing a motion for judgment on the pleadings, Judge Dalzell advised Wells Fargo that it could wait to respond to the complaint or file a renewed motion to dismiss until the Court had decided whether the FDCPA claim against PH would remain, as it would affect the Court's subject matter jurisdiction.

PH filed its motion for judgment on the pleadings on April 11, 2014. In the interim, the case was reassigned to this Court. By Memorandum and Order entered on December 4, 2014, the Court denied the motion. Wells Fargo has renewed its motion to dismiss the remaining UTPCPL claim. PH has also filed a motion for reconsideration of the Court's order denying its motion for judgment on the pleadings.

## II.  Wells Fargo's Motion to Dismiss

The only claim that remains against Wells Fargo is Hoffman's UTPCPL claim. "To bring a private cause of action under the UTPCPL, a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result." Yocca v. Pittsburgh Steelers Sports, Inc., 578 Pa. 479, 501, 854 A.2d 425, 438 (2004); see also Ries v. Curtis, No. 13-1400, 2014 WL 5364972, at *9 (E.D. Pa. Oct. 22, 2014). "[T]he UTPCPL is to be liberally construed to effectuate its objective of protecting the consumers of this Commonwealth from fraud and unfair or deceptive business practices." Ash v. Cont'l Ins. Co., 593 Pa. 523, 530, 932 A.2d 877, 881 (2007); see also Fazio v. Guardian Life Ins. Co. of Am., 62 A.3d 396, 405 (Pa. Super. Ct. 2012).

While Hoffman's Complaint alleges that reliance on the recorded assignments of the mortgage was a fraudulent misrepresentation, Wells Fargo asserts that, even if the recorded mortgage assignments were invalidated, it was proceeding with the foreclosure in reliance upon the original Note endorsed in blank as well. There is no dispute here that Wells Fargo possessed the original Note at trial. "Under the Pennsylvania Uniform Commercial Code (PUCC), the note securing a mortgage is a negotiable instrument. A note endorsed in blank is a 'bearer note,' payable to anyone on demand regardless of who previously held the note." Bank of Am., N.A. v. Gibson, 102 A.3d 462, 466 (Pa. Super. Ct. 2014) (citing J.P. Morgan Chase Bank, N.A. v. Murray, 63 A.3d 1258 (Pa. Super. Ct. 2013); 13 Pa.C.S.A. §§ 3109(a), 3301). However, at trial in the underlying foreclosure litigation, Wells Fargo had no witness to authenticate the note. The judge presiding determined that despite being in possession of the original note, Wells Fargo did not meet its evidentiary burden to establish the Note was endorsed in blank. In short, the note was a valid basis for seeking foreclosure, but Wells Fargo failed in its proof.

Wells Fargo also attempted to foreclose on a second basis, the chain of recorded assignments. Wells Fargo argues that, even if the recorded assignments were invalidated, the existence of a separate valid basis for foreclosure made any potential misrepresentation of the recorded assignments immaterial. With respect to the UTPCPL, this misses the point. Once the foreclosure court found insufficient evidence to support the theory that the Note was endorsed in blank, it was necessarily tasked with assessing the second purported basis upon which Wells Fargo was attempting to foreclose—the chain of title established by the recorded assignments. Even though the foreclosure court ultimately refused to consider any of the assignments, I cannot say that any undisclosed defects in the recorded assignments were immaterial.[1]

---

[1] I note that it is undisputed that the unrecorded assignments were to GNMA, which is a guarantor of mortgage obligations, and not a lender. I harbor serious doubt that such assignments would cut off the right of mortgage

Nonetheless, I find that Hoffman has not adequately pleaded a UTPCPL claim against Wells Fargo. To establish causation, a plaintiff must show that "knowledge of deceptive conduct 'would have changed [Plaintiff's] conduct.'" Ries v. Curtis, No. 13-1400, 2014 WL 5364972, at *9 (E.D. Pa. Oct. 22, 2014), Id. (citing Hunt v. U.S. Tobacco Co., 538 F.3d 217, 224 (3d Cir. 2008)). Here, the facts as pleaded in the complaint do not suffice to demonstrate that Hoffman justifiably relied on the potentially invalidated assignments or that Hoffman suffered harm as a result. In defending against the foreclosure action, Hoffman had to contend with the valid theory of a Note endorsed in blank in the possession of Wells Fargo. Under Plaintiff's own version of the facts, she was unaware of the unrecorded assignments until trial, and they were excluded from evidence as was the allegedly invalidated chain of recorded assignments. Even if the chain of assignments was a misrepresentation, her defense of the action did not rely on the invalidity of the assignments. The Complaint does not allege that harm was suffered as a result of non-disclosure of additional assignments to GNMA. Thus, knowledge of the purported deceptive conduct would not have changed Hoffman's conduct, since Hoffman would have had to defend the action in the same manner given the Note endorsed in blank. Ries, 2014 WL 5364972, at *9.

There is a difference between losing a case and engaging in wrongful conduct. Plaintiff's remaining UTPCPL claim against Defendant Wells Fargo will be dismissed.

### III. Motion For Reconsideration by Defendants Phelan Hallinan & Schmieg and Dunn

#### A. Standard of Review

"[A] judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for

---

lenders to foreclose. However, as the issue before me has been raised on a Motion to Dismiss, I do not decide the motion on that basis.

summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999). Defendant PH asserts that the memorandum and order issued by this Court in denying its Motion to Dismiss contain clear errors which require correction in order to prevent such manifest injustice. "Where evidence is not newly discovered, a party may not submit that evidence in support of a motion for reconsideration." Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985). Applying that standard here, the Motion is denied with respect to the FDCPA claim.

  *B. PH's Motion for Reconsideration*

   1. Summary of Previous Decision with Regard to Plaintiff's FDCPA Claim

  With respect to the FDCPA claim, pursuant to 15 U.S.C. § 1692e, "a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." Plaintiff claims that the Defendants, by proffering the invalid assignments in support of their foreclosure action, "falsely represented the character and/or legal status of a debt in violation of [§ 1692e(2)(A)], threatened to take an action that could not legally be taken, in violation of [§ 1692e(5)], and used a false representation or deceptive means to attempt to collect a debt, in violation of [§ 1692e(10)]." Compl. ¶ 30.

  This Court determined that "For the purposes of this motion, the fact that Plaintiff pleaded that [the recorded assignments] had been invalidated is enough, though evidence will need to be provided later. If, however, the recorded assignments remained valid, then clearly no FDCPA claim may lie." Relying on the logic Judge Dalzell's opinion in Yentin v. Michaels, Louis & Assocs., Inc., No. 11-0088, 2011 WL 4104675, at *12 (E.D. Pa. Sept. 15, 2011), finding that the FDCPA applied to legal pleadings, this Court determined that the use of recorded assignments as the basis to foreclose, as well as endorsements of the validity of those

assignments, could be properly considered in FDCPA claims.  Dec. 4, 2014 Memorandum at 4.

Further, this Court held that false representations prohibited by § 1692e need not be intentional

where a debt collector has not exercised due care to avoid them.  Id. at 4-5.  At this point, this

Court stated that Plaintiff had adequately pleaded a claim under § 1692e.  Id. at 5.

Nevertheless, the Defendants had also urged the Court to dismiss on the theory that any

false representation with regard to the validity of the assignments had no material effect on the

outcome of the foreclosure action.  As this Court stated, the Third Circuit has not yet imputed a

materiality component into the FDCPA claims arising from communications made in the course

of litigation, Kaymark v. Bank of America, N.A., No. 13-0419, 2014 WL 1316120, at *17 (W.D.

Pa. Mar. 31, 2014), but several other circuits have read such a requirement into the statute.  Dec.

4, 2014 Memorandum at 5.  However, this Court disagreed with the Defendants' characterization

of such a materiality requirement.  As stated, this Court determined that a materiality

requirement focuses on weeding out mere technical falsehoods that mislead no one, while

covering "genuinely misleading statements that frustrate a consumer's ability to intelligently

choose his or her response."  Donohue v. Quick Collect, Inc., 592 F.3d 1027, 1033 (9th Cir.

2010).  On this basis, whether or not materiality is a requirement in this Circuit, I decided that

alleged misrepresentation here was sufficiently material.

   2. Arguments Motion for Reconsideration

Defendant PH first asserts that the memorandum and order this Court issued denying its

motion to dismiss improperly treated Plaintiff's conclusion of law as a conclusion of fact to be

accepted as true for the purposes of the motion to dismiss.  Specifically, when determining

whether or not the two recorded assignments upon which the Defendants relied in launching their

foreclosure action were invalidated by the undisclosed, unrecorded assignments that they had in

their possession, the order stated that "for the purposes of this motion, the fact that Plaintiff pleaded that they had been invalidated is enough, though evidence will need to be provided later." Memorandum at 4. PH argues that, as a matter of law, the unrecorded assignments at issue here cannot invalidate recorded assignments, and therefore the Court was incorrect in accepting Hoffman's assertion as fact for the purposes of this motion. PH submits that the Court should: (1) reconsider the order; (2) treat Plaintiff's conclusion as a legal conclusion entitled to no weight or presumption of truth; (3) determine as a matter of law that the unrecorded assignments did not detract from the validity of the recorded assignments; and (4) grant PH's motion to dismiss with prejudice.

PH's position relies on the claim that an unrecorded mortgage assignment can never invalidate a recorded mortgage assignment. In support of this position, PH cites to only one case, that of <u>Booth v. Wolff Process Leather Co.</u>, 224 Pa. 583, 73 A. 959 (1909). In that case, the nonpayment of taxes caused the whole of the principal of the debt to come due according to a provision in the mortgage. One defense asserted was that the mortgage had been assigned before the suit was brought by the plaintiff, an allegation based on the fact that an unrecorded mortgage assignment was produced along with other papers by the plaintiff. However, the plaintiff's answer asserted that the assignment had been executed in contemplation of completing an agreement, but the agreement was abandoned, with the assignment having never been delivered. The court refused to find that a prior assignment had taken place.

Contrary to PH's assertion, <u>Booth</u> does not appear to stand for the proposition that a prior unrecorded assignment can never invalidate a recorded assignment. Rather, <u>Booth</u> holds that the mere existence of an unrecorded assignment cannot invalidate a recorded assignment where that assignment was never delivered and the transaction never completed. With a motion for

judgment on the pleadings, the Court is focused on the complaint, and the complaint leads to the inference that the transactions relating to the unrecorded assignments were completed. <u>Booth</u> says nothing about the power of unrecorded assignments to invalidate recorded assignments generally, but the Court agrees that <u>Booth</u> stands for the proposition that evidence of that such transactions never took place would mean that the unrecorded assignments could not have invalidated the recorded assignments.

In the absence of guidance from PH, this Court notes that with respect to title in Pennsylvania, "[a]n unrecorded deed is quite valid as against . . . a subsequent grantee to whom the property is conveyed without consideration. It is also valid and retains its priority against subsequent grantees and mortgagees, even though they give a valuable consideration, if they had notice of the prior conveyance. Ladner Pennsylvania Real Estate Law, §19.03 (6th ed. 2013); <u>Jennings v. Bloomfield</u>, 199 Pa. 638, 49 A. 135 (1901). Ladner explains:

> In order to make recording effective protection against frauds, the law must visit some disadvantage upon those who do not record their deeds and **mortgages.** This has been done by the various recording acts and their amendments from 1775 on, which provide that if a deed is not recorded, it shall be void as against "any subsequent bona fide purchaser or mortgagee or holder of any judgment, duly entered in the prothonotary's office of the county in which the lands, tenements or hereditaments are situate, without actual or constructive notice." Note that the failure to record a deed does not make it totally void, but void only as to the parties mentioned in the statutes. Thus, if A executes and delivers a deed to B who fails to record it, and A thereafter makes and delivers to C, for valuable payment, another deed for the same land, B's deed is still good as against A; but as to C, B's deed is void unless B can prove that C gave no value for C's deed or **actually knew or should have known of the earlier deed to B**. In this way, the law protects the innocent purchaser without enabling the grantor to derive any benefit from B's failure to record his deed. The law desires not so much to punish B as to protect C.

Ladner Pennsylvania Real Estate Law, § 19.04 (6th ed. 2013). Furthermore, "Pennsylvania clings to the common law premise that a mortgage is an actual conveyance of title to the property from the mortgagor to the mortgagee." <u>Id.</u> at § 22.01. As Ladner points out, "Pennsylvania has

consistently recognized that it is well settled in Pennsylvania that a mortgage . . . in form is a conveyance of title." Id. (citing Pines v. Farrell, 577 Pa. 564, 848 A.2d 94 (2004); Winthrop v. Arthur W. Binns, Inc., 50 A.2d 718, 719 (Pa. Super. 1947); Hahneman Medical College & Hospital v. Commonwealth, 52 Pa. Cmwlth. 558, 416 A.2d 604, 607 (1980)).

Mortgages must be recorded within six months, 21 P.S. § 621, but no such requirement exists for the assignment of that mortgage thereafter. Also, mortgage priority is determined from by the time it is recorded, not from its date of delivery, unlike a deed. 42 Pa. C.S. §§ 8141, 8142; Ladner Pennsylvania Real Estate, §23.05(a) (6th ed. 2013). However, assignments deal with the transfer of the same mortgage, rather than new individual mortgages, and in that respect are more like deeds conveying title, where title is to the mortgage rather than the land. As Ladner puts it, "[a]n assignment of mortgage is the transfer of the mortgagee's rights under the promissory note and accompanying security instrument from one party to another. After the assignment, the mortgagor is bound to the new mortgagee, the assignee of the mortgage." Id. at § 26.01.

While this concept deals with deeds and, by approximation, mortgages, this Court has found no authority explaining why it should not apply to assignments of mortgages as well. Parties are invited to brief the issue on summary judgment, should such a motion arise. However, none of the sparse authority cited in the Parties' briefing both on motion to dismiss and now on reconsideration has suggested that the same concept should not apply. To elaborate on this concept, it appears to this Court that where an unrecorded assignment is made before a recorded assignment, the recorded assignment could be invalid if Wells Fargo had prior notice of the unrecorded assignments.

On this basis, it is clear that Hoffman has pleaded enough facts to maintain her claim. She has alleged that prior unrecorded assignments existed and were in the Defendants possession

when the claim was brought. Since these assignments were in the origination file with all of the other documents pertaining to the mortgage, this Court can infer, for the purposes of a motion to dismiss, that Defendants were aware of the prior assignments. Clearly, Hoffman will be required to provide evidence of, among other things, (1) the completed transactions involving the unrecorded assignments, (2) Wells Fargo's knowledge of the prior assignments at the time it received its assignment, and (3) PH's prior knowledge of the existence of those unrecorded assignments. Nevertheless, the Court finds no clear error in its determination that Hoffman has sufficiently stated a claim.

PH further argues that there were independent legal grounds for bringing the foreclosure action beyond the chain of assignments. PH specifically points to the theory that the Note was endorsed in blank, enabling the holder—Wells Fargo—to enforce it. PH asserts that, on this basis, the assignments were not material. Indeed, I addressed materiality with regard to the UTPCPL claim against Wells Fargo earlier in this memorandum. Nonetheless, materiality with regard to UTPCPL is different than materiality with regard to the FDCPA, as demonstrated by the case law surrounding materiality under the FDCPA. The Court has already stated its pronunciation of materiality, to the extent it is a requirement in this Circuit. The materiality requirement focuses on weeding out mere technical falsehoods that mislead no one, while covering "genuinely misleading statements that frustrate a consumer's ability to intelligently choose his or her response." Donohue v. Quick Collect, Inc., 592 F.3d 1027, 1033 (9th Cir. 2010). In other words, the measure of materiality is not the misrepresentation's effect on the outcome, but rather whether it would mislead an unsophisticated consumer.

As stated in the memorandum underlying this motion, under 15 U.S.C. § 1692e, "a debt collector may not use any false, deceptive, or misleading representation or means in connection

with the collection of a debt." The fact that this allegedly false, deceptive, and misleading representation of the mortgage assignments was accompanied by another theory that was potentially plausible does not diminish the falsity, deceptiveness, or ability to mislead of the misrepresentation made regarding the mortgage assignments. Unlike the UTPCPL claim, there is no justifiable reliance or ascertainable loss requirement attached to the FDCPA.

While I will deny the motion for reconsideration with respect to the FDCPA claim, I recognize that the parties have submitted information bearing on the nature of Ginnie Mae, the entity to which the unrecorded assignments are directed. While this information sheds great light on what probably occurred and on the validity of the recorded assignments, it is most appropriately considered in the context of a motion for summary judgment.

PH also asserts that Hoffman does not have standing to challenge the validity of the assignments. This issue was not raised by PH in the underlying motion for judgment on the pleadings. A motion for reconsideration is not an appropriate vehicle to raise the issue of standing for the first time.

### 3. Reconsideration of UTPCPL Claim Against PH

The same analysis set forth with regard to the UTPCPL claim against Wells Fargo applies with equal force to PH, and I will grant the motion for reconsideration with regard to the UTPCPL claim against PH. While I initially denied the Motion for Judgment on the Pleadings with regard to this claim, I recognize that I did not consider the impact of the valid theory of a Note endorsed in blank that was also a basis for the foreclosure action. When this alternative basis is considered, the complaint does not adequately allege justifiable reliance or ascertainable loss with regard to the chain of recorded assignments.

**IV.     Conclusion**

Defendant Wells Fargo's Motion to Dismiss will be granted.  Defendants Phelan

Hallinan, LLP and Courtenay R. Dunn's Motion for Reconsideration will be granted with respect

to the UTPCPL claim and denied with respect to the FDCPA claim.

_____/s/ Gerald Austin McHugh
United States District Court Judge
