IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SONYA HOFFMAN, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | No. 13-5700 |
| v. | : | |
| | : | |
| PHELAN HALLINAN, LLP, | : | |
| and COURTENAY R. DUNN, ESQ., | : | |
| Defendants. | : | |

MCHUGH, J.                                                                                                    AUGUST 2, 2016

## MEMORANDUM

This case arises out of an unsuccessful attempt to foreclose on Plaintiff's home. After a series of opinions dismissing another party and other claims, the parties have now filed cross-motions for summary judgment on Plaintiff's sole remaining claim for violation of the Fair Debt Collection Practices Act (FDCPA). Because I find that there are no genuine issues of material fact and Defendants Phelan Hallinan, LLP and Courtenay R. Dunn are entitled to judgment as a matter of law, summary judgment will be entered in favor of Defendants.

### I. Facts

Because several opinions have already been written on this case, I recount the relevant facts only briefly. Plaintiff obtained a loan from Avstar Mortgage Corporation on August 14, 1998 to purchase real property in Darby, Pennsylvania. Accordingly, Hoffman executed a promissory note and a purchase money mortgage to Avstar, its successors and assigns. That same day, Avstar recorded the mortgage, endorsed the note, and then assigned the mortgage to Principal Residential Mortgage, Inc. That assignment was recorded August 17, 1998. Principal Residential Mortgage assigned the mortgage to the Government National Mortgage Association

1

(frequently called "Ginnie Mae" based on its acronym, GNMA) on September 1, 1998, but that assignment was never recorded. Principal Residential Mortgage then assigned the mortgage to Fleet Mortgage Corp. on November 2, 1999. The note was also transferred to Fleet at the time, and it was endorsed in blank. Fleet also executed an assignment of the mortgage to Ginnie Mae that same day, but again, the Ginnie Mae assignment was never recorded. Fleet Mortgage Corp. recorded its assignment on November 15, 1999. Fleet Mortgage Corp. was later merged into Washington Mutual Home Loans, Inc., which was subsumed by the Federal Deposit Insurance Corporation, which assigned the mortgage to Wells Fargo Bank on April 6, 2011. Wells Fargo recorded that assignment on the same day and obtained possession of the note endorsed in blank.

     Plaintiff failed to make some of her required payments on the loan, and in February 2012, Defendants commenced a foreclosure action against Plaintiff on behalf of Wells Fargo. After Plaintiff filed preliminary objections challenging Wells Fargo's standing to foreclose, Defendants filed an amended complaint on May 10, 2012. In that amended complaint, Wells Fargo alleged that it was the holder of the Mortgage and therefore entitled to enforce it, and in support thereof attached copies of the note, the mortgage, and the *recorded* assignments of the mortgage. They omitted, however, the records reflecting the two unrecorded assignments to Ginnie Mae. Wells Fargo filed a motion for summary judgment relying on both the recorded assignments and its status as holder in possession of a note endorsed in blank. The Delaware County Court of Common Pleas denied that motion for summary judgment without issuing an opinion.

     A bench trial was held on September 18, 2013 before Court of Common Pleas Judge G. Michael Green. At trial, Defendant Dunn produced the origination file to Plaintiff's counsel, which revealed the unrecorded assignments for the first time. Plaintiff requested sanctions

against Wells Fargo for failing to produce the unrecorded assignments in discovery, but that motion was denied.  Although Wells Fargo presented the original note at trial, they had no witness to authenticate the note, so the presiding judge determined that Wells Fargo did not meet its evidentiary burden to establish the note was endorsed in blank.  Therefore, the Court ultimately found in favor of Hoffman.

Hoffman brought this action alleging that in the course of the attempted foreclosure action, Defendants made representations that violate the FDCPA, 15 U.S.C. §§ 1692-1692p, entitling her to statutory damages and attorneys' fees.

## II.     Summary Judgment Standard

A party moving for summary judgment must identify "each claim or defense—or the part of each claim or defense—on which summary judgment is sought," and the court must grant the motion if the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law," and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment has the initial burden of identifying the portions of the record that demonstrate an absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The non-moving party must then "rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument."  *Berckeley Inv. Group. Ltd. v. Colkitt,* 455 F.3d 195, 201 (3d Cir. 2006); *see also Celotex*, 477 U.S. at 324.  While it is not a court's role to make credibility determinations or weigh the evidence, a court must assess "whether the evidence presents a sufficient disagreement

3

to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251–52.

**III.    Discussion**

   *A. FDCPA*

Pursuant to 15 U.S.C. § 1692e, "a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." The representation at issue must be material to be actionable; that is, it must be capable of influencing the response of the "least sophisticated debtor" to the attempted debt collection. *Jensen v. Pressler & Pressler*, 791 F.3d 413, 421 (3d Cir. 2015).[1] The FDCPA covers attorneys engaged in debt collection litigation, and foreclosure qualifies as a debt collection action. *Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 176–77, 179 (3d Cir. 2015), *cert. denied sub nom. Udren Law Offices, P.C. v. Kaymark*, 136 S. Ct. 794 (2016).

As previously addressed in my June 16, 2015 Opinion, Defendants' possession of the note endorsed in blank provided a valid basis for seeking foreclosure, but Defendants also proffered the chain of recorded assignments in support of the foreclosure. Plaintiff argues that these assignments were invalid, and they therefore constitute a misrepresentation "that Wells Fargo … had acquired ownership of Plaintiff's mortgage and was entitled to foreclose," which, they argue, is a "false, deceptive, and/or misleading representations and/or means in connection with the collection of a debt in violation of [the] FDCPA … ." Mem. Supp. Cross-Mot. Summ. J. at 1.

---

[1] At the time of my last Opinion in this case, the Third Circuit had not yet adopted a materiality requirement as a component of FDCPA claims arising from communications made in the course of litigation. Nevertheless, I anticipated that such a requirement would focus on whether a misrepresentation would "mislead an unsophisticated consumer." June 2015 Opinion at 15. The Third Circuit has since recognized a materiality requirement in *Jensen v. Pressler & Pressler*, 791 F.3d at 42, defining the requirement in a way that is consistent with the test I applied, so this development in the law does not change my prior analysis.

4

### B. Possession of the Promissory Note

Despite my attempts to resolve the issue in the June 2015 Opinion, the parties are insistent on continuing to debate whether Wells Fargo needed to prove it acquired ownership of the mortgage through a chain of assignments before being entitled to foreclose. In Defendants' view, being the holder in possession of a note indorsed in blank was sufficient by itself to establish standing to foreclose, so whether or not they disclosed additional information about the chain of assignments of the mortgage is immaterial to their attempts to collect on the debt and therefore cannot serve as the basis for FDCPA liability. In Plaintiff's view, the note alone can *never* be sufficient to foreclose on property in Pennsylvania, because a valid assignment of the mortgage is required to proceed in an *in rem* action, so asserting a right to foreclose without the ability to prove a proper chain of title of the mortgage is a necessary false or deceptive representation giving rise to FDCPA liability.

The law regarding the import of mortgage assignments for Pennsylvania foreclosure actions is uncertain and has in many ways failed to evolve rapidly enough to keep pace with the rise of trading in mortgage-backed securities. This gap in the law has shown itself in cases like this one in which title to a mortgage becomes clouded as it is purchased and repackaged by various entities before the borrower defaults. Unfortunately, "[u]nderstanding the emergence of the mortgage-title-system problem and how it might be fixed requires spelunking into some of the hoariest and most technical minutiae of commercial and real-property law." Adam J. Levitin, *The Paper Chase: Securitization, Foreclosure, and the Uncertainty of Mortgage Title*, 63 DUKE L.J. 637, 645 (2013).

Plaintiff argues that Pennsylvania mortgage law embraces a title-theory system in which the mortgage conditionally conveys title to the subject property until the note is payed. Pl. Mem.

Opp'n Defs.' Mot. Summ. J. at 6 (citing *Pines v. Farrell*, 577 Pa. 564, 575, 848 A.2d 94, 100–01 (2004)). Thus, while possession of the note may serve as the basis for an *in personam* action to recover against the borrower personally, a proper assignment of the mortgage itself is necessary to demonstrate ownership and bring an *in rem* action to foreclose on the mortgaged property. Pl. Mem. Opp'n Defs.' Mot. Summ. J. at 6 (citing Irv Ackelsberg, *Residential Mortgage Foreclosure: Pennsylvania Law & Practice* § 7.5 (2d ed. 2014).[2]

Defendants, on the other hand, make convincing arguments that an assignment of the mortgage is not necessary for foreclosure. They argue that a note securing a mortgage is a negotiable instrument under Pennsylvania's Uniform Commercial Code, so a person in possession of a note endorsed in blank qualifies as a "person entitled to enforce" (PETE) the instrument, even if that person is not the owner of the instrument. Def. Mem. Opp'n Pl. Cross-Mot. Summ. J. at 4 (citing 13 Pa. C. S. § 3301). Furthermore, under well-settled law, "[t]he note and mortgage are inseparable" and "[a]n assignment of the note carries the mortgage with it…." *Carpenter v. Longan*, 83 U.S. 271, 274 (1872); *see also* 13 Pa.C.S. § 9203(g). Pennsylvania law appears to be evolving on this issue; the Pennsylvania Supreme Court recognized in 2004 that there is Pennsylvania common law authority reflecting *both* the lien theory and title theory of mortgages, and while it ultimately applied the title theory, it limited its holding to the specific acts at issue in that case and sympathized with one party's argument that the title theory is obsolete. *Pines v. Farrell*, 577 Pa. 564, 575, 848 A.2d 94, 100 (2004). Although the Pennsylvania Supreme Court has not yet addressed this issue squarely, there is some consensus

---

[2] Plaintiff relies on this well-respected treatise for the proposition that a note alone is an insufficient means of demonstrating standing to foreclose. I note, however, that this edition of the treatise relied heavily on *Montgomery Cty. v. MERSCORP, Inc.*, 16 F. Supp. 3d 542 (E.D. Pa. 2014) in its analysis of this issue, which was reversed by the Third Circuit, 795 F.3d 372 (3d Cir. 2015,) after the treatise's publication.

6

building that being a PETE is enough to foreclose.[3]  *See Potoczny v. Aurora Loan Servs., LLC*, 33 F. Supp. 3d 554, 565–66 (E.D. Pa. 2014), *aff'd sub nom. Potoczny v. Aurora Loan Servs.*, 636 Fed. Appx. 115 (3d Cir. 2015); *J.P. Morgan Chase Bank v. Murray,* 63 A.3d 1258, 1263–66 (Pa. Super. Ct. 2013); *In re Walker,* 466 B.R. 271, 282, 285–86 (Bankr. E.D. Pa. 2012); *U.S. Bank, Nat. Ass'n v. Zimmer*, No. 12-644, 2015 WL 412389, at *4 (M.D. Pa. Jan. 30, 2015); *U.S. Bank, N.A. v. Pautenis*, 2015 PA Super 129, 118 A.3d 386, 393 n.8 (2015).

The record is clear that Wells Fargo proffered a chain of recorded assignments in support of its foreclosure action.  As I previously held, Defendants' representation that Wells Fargo was validly assigned the mortgage and entitled to foreclose on that basis could therefore, if false, be a material misrepresentation, even if there existed an alternative basis for foreclosure: possession of note indorsed in blank.  In short, the existence of a valid path to foreclosure does not preclude FDPCA liability if Defendants followed one based on misrepresentation.  Consequently, Plaintiff may be able to succeed in an FDCPA claim if she can prove the *invalidity* of the proffered chain of assignments.

   *C. Validity of the Mortgage Assignments*

Plaintiff argues that the assignments to Ginnie Mae, while unrecorded, were nevertheless completed and valid assignments that precluded the assignments to Fleet Mortgage Corp. and Wells Fargo.[4]  I disagree, because the record demonstrates that while Ginnie Mae was assigned *equitable* title to Plaintiff's mortgage, these assignments did not impact the *legal* title to the

---

[3] Defendants submitted supplemental authority from the Pennsylvania Superior Court on this issue (Doc. 75), which Plaintiff correctly pointed out is an unpublished memorandum upon which I cannot rely.  Because this issue is ultimately not dispositive of Plaintiff's FDCPA claim, I do not consider the supplemental authority in my decision.

[4] I noted in the June 2015 Opinion that "Ginnie Mae is a guarantor of mortgage obligations, and not a lender," and "I harbor[ed] serious doubt that such assignments would cut off the right of mortgage lenders to foreclose."  June 16, 2015 Memorandum at 8 n.1.  While I could not decide a motion to dismiss on that factual basis, I do reach this issue now that Cross-Motions for Summary Judgment and a factual record are before me.

mortgages or affect Wells Fargo's receipt of a valid assignment from the Federal Deposit Insurance Corporation.

Ginnie Mae is a key player in the secondary market in residential mortgages that has grown in recent years. Ginnie Mae:

> is a wholly-owned corporate instrumentality of the United States within the Department of Housing and Urban Development. It was authorized by the National Housing Act, 12 U.S.C. § 1717(a)(2)(A), et seq., and 24 CFR Section 390.1, to guarantee timely payment of the principal of, and interest on, securities based on and backed by pools of mortgages insured by the Federal Housing Administration or guaranteed by the Veterans Administration.

*First Nat. Bank of Chicago v. Jefferson Mortgage Co.*, 576 F.2d 479, 482 (3d Cir. 1978). The process of issuing a Ginnie Mae-backed security begins with a mortgage company that originates or buys qualifying federally-insured loans and pools them together. *Id.* at 482 n.1 (3d Cir. 1978). A bank or other lender then takes custody of the mortgage documents, and Ginnie Mae approves the issuance of securities based on these mortgages. *Id.*

By backing the securities, Ginnie Mae guarantees to investors that if the issuer cannot timely pay the proper amount of principal and interest to the pool's investors, the U.S. government will pay any shortage of money. 12 U.S.C. § 1721(g)(1). Ginnie Mae guarantees the performance of the issuer rather than the underlying collateral, so it neither buys loans nor issues its own securities. Ginnie Mae's Role in Housing Finance, Ex. to Pl. Cross-Mot. Summ. J. at 1. In return for the guarantee, which makes the securities more marketable to investors, the issuer pays a fee and gives Ginnie Mae a conditional interest in the underlying mortgages. 12 U.S.C. § 1721(g)(1).

Under the standard Guaranty Agreement between an issuer and Ginnie Mae, the issuer secures this conditional interest by assigning to Ginnie Mae the *equitable* title in the mortgage. *United States v. NBD Bank, N.A.*, 922 F. Supp. 1235, 1240 (E.D. Mich. 1996). The issuer,

8

however, retains legal title so that it may service the mortgages. *Id.* Put another way, the assignment to Ginnie Mae is a conditional assignment, which Ginnie Mae only has the right to accept and enforce "if the issuer defaults on its obligation to holders of the mortgage-backed securities." *Poindexter v. Nat'l Mortgage Co.*, No. 94-5814, 1995 WL 242287, at *1 (N.D. Ill. Apr. 24, 1995) (citing Nelson and Whitman, 2 *Real Estate Finance Law* § 11.3 at 75). *See also* 37 NO. CD-24 HDR Current Developments 28 (explaining that Ginnie Mae holds equitable title to loans backing securities it guarantees, but will only acquire legal title if the securities issuer defaults); Truth in Lending, 74 FR 60143-01 ("[A]s the guarantor of these securities, Ginnie Mae obtains equitable title in the mortgage loans but … the issuers of the securities retain legal title to the loans that collateralize the securities. … [L]egal title to the loans is not conveyed to Ginnie Mae unless the issuer of the securities defaults in its obligations."); Thomas P. Lemke, *et al.*, *Conditional Assignment of Collateral—Alternate Method to Secure Mortgages*, MORTGAGE-BACKED SECURITIES § 8:14 (2015).

I am convinced that granting anther party equitable title in the mortgage did not affect the legal chain of title of the mortgage. As I previously held, under Pennsylvania law "the mere existence of an unrecorded assignment cannot invalidate a recorded assignment where that assignment was never delivered and that transaction never completed." Plaintiff has produced no evidence establishing that Principal Residential Mortgage or Fleet Mortgage Corporation defaulted, or otherwise authorized Ginnie Mae to acquire legal title to the loans.[5] Since the evidence therefore indicates that the transfer of legal title to the mortgage was never completed,

---

[5] Plaintiff claims that the record is incomplete, and she therefore cannot present the facts essential to justify her position, because her request to compel a subpoena on non-party the United States Department of Housing and Urban Development (HUD) was denied by the Court. *See* Doc. 67. However, I found HUD's objections to the procedural deficiencies of the subpoena to be valid, and it was my understanding that in spite of those deficiencies, HUD produced some responsive documents. I am therefore confident that I am not precluded from entering summary judgment on this basis.

and it was not intended to be completed unless a particular event occurred, the unrecorded assignment of equitable interest does not invalidate Wells Fargo's recorded assignment. Therefore, it was not a material misrepresentation to present the recorded assignments as evidence of the legal chain of title supporting a foreclosure action.

Evidence that another entity has a future interest in a mortgage does not mean that Wells Fargo could not foreclose, since a PETE "may well not be the entity entitled to receive the economic benefits from payments received thereon." *PHH Mortgage Corp. v. Powell*, 100 A.3d 611, 621 (Pa. Super. Ct. 2014); *see also Murray*, 63 A.3d at 1265.  Significantly, payment to the note holder discharges the debt even if someone else has claims to the note; a debtor is therefore not in danger of being subjected to double liability if someone else has an ownership interest in the mortgage.  13 Pa.C.S. § 3602(a); *see also Murray*, 63 A.3d at 1265 (2013) (citing *In re Walker*, 466 B.R. 271, 285–86 (Bankr. E.D. Pa. 2012)).  Therefore, while the chain of recorded assignments may not have reflected every entity that interacted with the mortgage on its path to Wells Fargo, they do not constitute a false or misleading representation because they accurately identified the party with legal ownership of the mortgage.  Nor was Plaintiff put at risk by failure to disclose Ginnie Mae's interest.

For these reasons, Defendants' Motion for Summary Judgment must be granted, and Plaintiff's Cross-Motion for Summary Judgment must be denied.  An appropriate Order follows.

                                                      /s/ Gerald Austin McHugh
                                             United States District Judge